## KANSAS CITY SOUTHERN RY. CO. et al. v. GERMO MFG. CO. et al.

No. 24964.   Sept. 17, 1935.

J. B. McDonough, E. T. Miller, and Cruce & Franklin, for plaintiffs in error.

White & White, for defendants in error.

RILEY, J. This is an appeal from a judgment against Le Flore county in favor of the Germo Manufacturing Company, in an action wherein the Kansas City Southern Railway Company and the receivers of the St. Louis & San Francisco Railway Company were permitted to, and did intervene as taxpayers to defend said action.

The action is based upon a warrant issued by the board of county commissioners, dated July 2, 1928, of the 1927-1928 series, payable out of the general fund of the county, and purports to have been issued in payment for jail supplies.

The petition alleges the issuance and delivery of the warrant in the sum of $397.62, rate of interest 6 per cent., its registration, etc., and then alleges:

"That said warrant was and is in all things legal and binding and within the approved estimate for the county of Le Flore, state of Oklahoma, for the fiscal year 1927-28, and so certified by the county treasurer of Le Flore county, Okla., as provided by law. * * * "

The county attorney on behalf of the county filed an answer consisting of a general denial. The Kansas City Southern Railway Company and the receivers of the St. Louis & San Francisco Railway Company, as taxpayers, filed a joint application for leave to intervene and defend the action. Leave was granted, and the interveners filed an answer, attacking the validity of the warrant sued upon, alleging in substance that the claim upon which the warrant was issued was neither signed nor verified; that at the time the claim was created for which the warrant was issued there was no appropriation in existence authorized by the excise board of said county; that long after the attempt to create the alleged claim of indebtedness the county excise board had attempted to make a supplemental appropriation by transferring $1,113.48 from the separate school fund and the tick eradication fund of the county to the general fund for the maintenance of prisons, etc., and that such attempted transfer was illegal, unauthorized, and void, and that by reason thereof there was no valid appropriation against which the warrant could be legally issued.

It appears from the evidence that on the appropriation records of the county, the maintenance of prisons, etc., was designated as "Department B., Account 9"; that there was an original appropriation made for that account for the year 1927-28 fiscal year in the sum of $500; that said appropriation was not finally approved by the county excise board until September 20, 1927.

On July 5, 1927, someone, probably the undersheriff of the county, gave an order to the Germo Manufacturing Company, plaintiff herein, for one 60-gallon drum of insecticide at $2 per gallon; one 60-gallon drum of Pine Scrub Compound at $2 per gallon; one 60-gallon drum of Synol at $2 per gallon, with a charge of $6 for each drum. The drums were returnable. Freight charges were added, making a total charge of $397.68.

An itemized statement, verified June 7, 1928, attached to a regular claim blank against the county, was filed with county clerk on June 25, 1928. This claim was marked "allowed" July 3, 1928. The warrant, however, was issued, dated July 2, 1928.

No warrants were drawn against the $500 appropriation until October 3, 1927, at which time a warrant was drawn in the sum of $199.36 in favor of the American Disinfectant Company. Nothing further is shown as to the appropriation until November 7, 1927, at which time the sheriff, without any authority from the county excise board, county commissioners, or anyone else, transferred on the appropriation records of the county clerk the sum of $113.05 from fund B. 8 (boarding prisoners) to B. 9, the jail supply fund. Other claims seem to have been allowed against the fund from that date to May 28, 1928, at which time there was $1.94 left in the appropriation.

On the last-named date the so-called supplemental appropriations were made. There was then added to this appropriation the sum of $1,113.48. Where the money was obtained was explained in the following manner: $3,000 was transferred from the separate school fund of the county to the general fund; $2,600 was transferred from the tick eradication fund to the general fund; $50 of the appropriation for visitation of the county superintendent was canceled. This $5,650 was then distributed among various departments of the county government, $1,113.48 being transferred to the account B. 9, jail supplies.

On July 2 (or 3), 1928, the claim of the Germo Manufacturing Company was allowed and the warrant sued upon was issued.

With this showing the court found for plaintiff and entered judgment for the full amount of the warrant.

From this judgment interveners appeal. The board of county commissioners did not see fit to appeal, and the county is made a party defendant in error.

It is first contended that the judgment is erroneous because the evidence establishes that at the time this claim was created there was no lawful appropriation for the purpose for which the items were furnished to the county. That there was no appropriation for that purpose on July 5, 1927, is self-evident. In Protest of K. C. So. Ry. Co., 157 Okla. 246, 11 P. (2d) 500; it is pointed out that, under the law, no appropriation for any purpose can be made in any fiscal year prior to the last Saturday in July. It is said that:

"As a matter of law, the excise board could not have legally approved an estimate of the

county for the fiscal year commencing July 1, 1926, on or prior to July 19, 1926, the date on which the contract was entered into."

What was said in that case and in Protest of Bledsoe et al., 161 Okla. 227, 17 P. (2d) 979, is relied upon to support the contention that no judgment should have been rendered upon the warrant sued upon. In the latter case it is said:

"The protestee contends that the appropriation was illegal, for the reason that no contract for the construction of the bridge was entered into until November 25, 1930. That contract would have been illegal had it been entered into prior to the making of the appropriation. The appropriation must be made before the contract may be entered into. We find no error in the judgment of the Court of Tax Review as to that item, and it is affirmed."

This was pure dictum. The question was not before the court as to the validity of a contract entered into before an appropriation was made. The protestant there was making the unique claim that a contract entered into after the appropriation was made was invalid. A careful reading of the case of K. C. So. Ry. Co., supra, will show that the real reason the judgment there under consideration was void was that the petition on its face alleged that the contract was within an appropriation made at a time when no appropriation could be made, and that such attempted approved estimate or appropriation was afterwards canceled.

Defendant in error cites and relies upon Union School Dist. No. 1 v. Foster Lumber Co., 142 Okla. 260, 286 P. 774; Consolidated School Dist. No. 2 v. Arlington Supply Co, 148 Okla. 299, 298 P. 1052; and State ex rel. Roland v. Bd. of Co. Com'rs of Carter County, 160 Okla. 276, 16 P. (2d) 104.

The question here presented was thoroughly considered in Union School Dist. No. 1, Kay Co., v. Foster Lbr. Co. Therein it is pointed out that no appropriation can be made under the law before the last Saturday in July; that often the county excise board does not complete its work for some two or three months; that in the meantime important governmental functions must cease if no such contracts could be made. It was there held that contracts made after the beginning of the fiscal year and before any appropriation is made to cover same are not absolutely void, but are conditionally void. That if no appropriation be made within such fiscal year for the specific purpose, such contract is not enforceable, but if within the fiscal year an appropriation be made for the specific purpose, warrants may thereafter be legally issued against such appropriation.

The question was again before the court in Consolidated School District v. Arlington Supply Co., supra. It was there held that such contracts could be entered into, and became valid and binding if within the fiscal year the proper appropriation be made. It was further held that such a contract would not be invalidated by the exhaustion of the appropriation afterwards made by allowance of bills contracted against same for other purposes.

Again in State ex rel. Roland v. Co. Com'rs of Carter County, supra, the direct question was before this court, and the rule announced in Union School Dist. No. 1 v. Foster Lbr. Co., supra, was followed.

The case of Protest of K. C. So. Ry. Co., supra, is not in conflict with the rule. There an estimate had been made by the county commissioners for a certain bridge. Before the county excise board could lawfully meet and approve such estimate a contract was let for the construction of the bridge, and work was commenced by the contractor. Afterwards and before the excise board passed upon the estimate, such estimate was canceled and no appropriation was ever made therefor. The conditions necessary for the validation of the contract never were fulfilled. It was properly held that no cause of action was or could be stated where such state of facts was pleaded. That case clearly demonstrates the rule that one contracting with a municipality before an appropriation is made covering the subject of the contract does so at his peril, and if no appropriation therefor is thereafter made within the fiscal year the municipality is bound.

What was said in Re Protest of Bledsoe, supra, on a question not then before the court, cannot be said to overrule the prior cases where the question was directly before the court.

It is next contended that there was no appropriation because the justification for the issuance of the warrant was based upon an unlawful attempt to transfer moneys from the tick eradication and separate school funds to the general fund.

The position of plaintiff in error may be, and probably is, correct on the question of the validity of the transfer of moneys in the separate school and tick eradication funds to the general fund. Protest of Wilhite, 150 Okla. 29, 300 P. 779: Hull v. Board

of Ed., 150 Okla. 30, 300 P. 775; Protest of O., R. I. & P. R. Co., 156 Okla. 100, 293 P. 539.

But it is conceded that an appropriation of $500 was made for the purpose of purchasing supplies, etc., for the county jail. This appropriation became effective September 20, 1927. The fact that the appropriation was exhausted by allowance of warrants against same did not invalidate plaintiff's claim if the sale of the supplies to the county was otherwise valid. Consolidated School Dist. No. 2 v. Arlington Supply Co., supra.

It is next contended that the claim upon which the warrant was issued was void because not properly signed nor sworn to as required by law.

This contention is without substantial merit. There was an itemized statement of the account showing the date of the alleged sale, each item making up the account, with the price thereof, and the total amount of the purchase; the three drums, and the charge for each, and showing that they were returnable, and finally the amount of freight charges. The account was verified by the oath of the company's credit manager, to the effect that the account was true and just; that the articles therein named had been furnished, and that no part of said account had been paid or satisfied. This was presented to the county clerk, who attached the same to a regular claim blank and marked it "Filed 6-25-1928." Signature and verification again on the claim blank thus attached was unnecessary.

Finally it is contended that the whole transaction was void because the evidence shows it was not authorized by the board of county commissioners, but was, if anything, an attempted purchase by the undersheriff of Le Flore county.

In this, coupled with the fact that there was no semblance of an attempt to comply with the valid provisions of chapter 49, S. L. 1925, there is merit.

The evidence shows, if any purchase of the supplies involved was ever made, it was made by the undersheriff of Le Flore county. This was shortly after the decision of this court in Walker-Taylor Co. v. Bd. Co. Com'rs of Okla. Co., 125 Okla. 226, 257 P. 324, holding section 5 of chapter 49, S. L. 1925, unconstitutional, and perhaps at a time when the decision of this court was not generally known. But under the provision of section 5, chapter 49, S. L. 1925, had the same been constitutional, there was no authority vested in the undersheriff to make purchases of supplies. The office or department for which the supplies were intended was the sheriff's office. The sheriff and not the undersheriff was the officer designated in said section 5, though unconstitutional, to make purchase of supplies for the county jail.

In the recent case of Western Paint & Chemical Co. v. Board of County Commissioners of Washington County, 171 Okla. 302, 42 P. (2d) 533, the provisions of chapter 49, S. L. 1925, other than section 5, were held valid.

As pointed out therein, one of the provisions of law is that "county and municipal officers and boards of county commissioners having authority to purchase supplies, materials, and equipment, * * * shall submit all purchase orders * * * to the officer charged with keeping the appropriation and expenditure records of the county," etc.

It was there said:

"That was wholesome legislation, designed to prevent the very thing here presented, i.e., a dual contract in value against a single sum appropriated and a resulting payment of one contract by warrants and the other by judgment."

In this case the $500 appropriation lawfully made was exhausted by issuance of warrants for other purchases without any knowledge whatever on the part of the officers charged with keeping the appropriation and expenditure records of the county, and apparently without any knowledge on the part of the board of county commissioners, that any attempted purchase of the supplies here involved had been made by anyone. The claim was not filed for nearly a year after the purported sale to the undersheriff. We are not willing to extend the rule so as to permit the board of county commissioners to validate every purchase made by any officer or deputy of the county before an appropriation has or can be made. To uphold such a transaction as is shown by the record in this case would in effect open the door to gross fraud upon the taxpayers and improvident and illegal expenditure of public money.

The fact that the county officials attempted by unauthorized transfers of money into the fund and so-called supplemental appropriation to bolster up the appropriation records so as to justify themselves in issuing a warrant did not in any way make the transaction, illegal in its inception, valid.

There was no legal basis for the issuance of the warrant, and the court erred in entering judgment therein.

The judgment is reversed.

McNEILL, C. J., and BUSBY, PHELPS, and GIBSON, JJ., concur.